UNITED STATES of America,

v.

Thomas T. JONES, Appellant.

No. 91–3025.

United States Court of Appeals,
District of Columbia Circuit.

Argued March 24, 1993.

Decided July 2, 1993.

Howard B. Katzoff, Washington, DC (appointed by this Court) argued the cause for appellant.

A.J. Kramer, Washington, DC (appointed by this Court) as amicus curiae on behalf of appellant.

John R. Fisher, Asst. U.S. Atty., Washington, DC, argued the cause for appellee. With him on the briefs were Jay B. Stephens, U.S. Atty., at the time the brief was filed, Barbara Grewe and Robin C. Ashton, Asst. U.S. Attys., Washington, DC.

Before: MIKVA, Chief Judge, WALD, EDWARDS, RUTH BADER GINSBURG, SILBERMAN, BUCKLEY, WILLIAMS, D.H. GINSBURG, SENTELLE, HENDERSON and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Circuit Judge STEPHEN F. WILLIAMS.

Dissenting opinion filed by Chief Judge MIKVA.

Dissenting opinion filed by Circuit Judge WALD.

Dissenting opinion filed by Circuit Judge SENTELLE.

STEPHEN F. WILLIAMS, Circuit Judge:

 The issue presented in this case is quite straightforward: whether a sentencing judge who grants a defendant credit for acceptance of responsibility, thereby putting the defendant in a lower range under the Sentencing Guidelines, may take account of the defendant's decision to go to trial when sentencing within the new, lower range. We hold that the judge may do so.

Following a three-day trial in November 1990, appellant was convicted by a jury of possessing 50 grams or more of cocaine base with intent to distribute, in violation of 21 U.S.C. §§ 841(a) and (b)(1)(A)(iii). The presumptive sentencing range, based on appellant's Criminal History Category (I) and the applicable Base Offense Level (34), was 151-to-188 months. See U.S.S.G. §§ 2D1.1(a)(3) and Ch. 5, Pt. A. Despite appellant's having gone to trial, the district judge granted him a two-level reduction for acceptance of responsibility under § 3E1.1 of the Guidelines. That lowered appellant's sentencing range to 121-to-151 months. See U.S.S.G. Ch. 5, Pt. A.

Before selecting a point within the range, the judge expressed some concerns arising from the two-level reduction:

Let me tell you what my problem is, Mr. Katzoff [the defense attorney], not that I am not prepared to give him the benefit of the two-point reduction, because he did acknowledge responsibility. The question is *should he receive the full benefit* of the two-point reduction in view of the fact that he simply has acknowledged that he was guilty of what the jury found him guilty of, after having put the government to its proof on the matter, which, indeed, he does have a constitutional right to do. But he,

in effect, had no defense.... *And simply saying [after trial], "Yes, you got me this time," is a rather meager basis upon which I might conclude that he truly was remorseful and had accepted full responsibility.*

\* \* \*

[Q]uery whether or not I should give him full credit for having accepted responsibility. I have a lot of difficulty with that.

The other side of the coin is that it is, in my judgment, an excessive penalty to pay under the Guidelines to give him no credit for acceptance of responsibility. Even if he had stonewalled, the idea that he gets an additional thirty months for stonewalling, which is what the Guidelines call for, seems to me to be unduly harsh and unfair.

Now I have given you the opposite ends of the spectrum on which I am operating here, I can tell you that my intention would be, because I disagree with the mandatory minimum sentence itself,[1] to give him the very minimum that I could give him under the Guidelines, and the mandatory minimum statutory sentence. But I am concerned about giving him full credit for acceptance of responsibility.

Sentencing Tr. at 2–4 (emphasis added).

The prosecutor and defense attorney then made sentencing recommendations, with the prosecutor and defense counsel respectively arguing for the top and the bottom of the range. After listening to counsel, the judge stated his decision:

I think that 151 months or, for that matter, a ten-year sentence in the circumstances of a case such as this is barbaric, but I have no choice in the matter.

This is undoubtedly an offense which would call for some jail time were I at liberty to impose a sentence that I would think would be fair in the case.

My ability to be fair has been constricted by the statutory inhibitions under which

---

1. Appellant faced a mandatory minimum sentence of ten years as a result of the conviction for possession of 50 or more grams of cocaine base

with intent to distribute. See 21 U.S.C. § 841(b)(1)(A)(iii).

I operate and, to a somewhat lesser extent, the Guidelines.

I do think that there is some premium that should be recognized for pleading guilty in advance of trial rather than taking a case to trial in which the defendant knows that he is guilty and he is properly charged and there is no defense to it.

I do, however, think that in the circumstances, *I intend to give Mr. Jones a major portion of the benefit that he derives from his acceptance of responsibility.*

I would, had this case been disposed of with a plea in advance of trial, have sentenced him at the very bottom of the Guidelines and imposed the minimum sentence that I could possibly have imposed.

Because, however, the case did go to trial, I am going to add an additional six months to the Guideline sentence that I intend to impose, and will impose a sentence of 127 months.

I am articulating this so that anybody that wishes to take it to the Sentencing Commission and/or the Court of Appeals may do so. I would like to have some thought given to the considerations I've articulated here today. *And I would like to know whether or not there is some constitutional error I commit by recognizing that the case was taken to trial, albeit a matter of constitutional right to take the case to trial, rather than acknowledging in advance the guilt that was obviously supported by the proof.*

Sentencing Tr. at 12–13 (emphasis added).

Jones appealed and this court affirmed, rejecting several claims of error, including Jones's constitutional attack on his sentence. *United States v. Jones,* 973 F.2d 928 (D.C.Cir.1992). We granted rehearing *en banc* to reconsider the sentencing issue; we again affirm, although on narrower grounds.

Jones argues that the district judge's 127-month sentence included an impermissible six-months penalty that was imposed because Jones exercised his constitutionally guaranteed right to trial. Assuming the ultimate validity of distinctions between denials of leniency and enhancements of punishment— see *Corbitt v. New Jersey,* 439 U.S. 212, 223–

24, 99 S.Ct. 492, 499–500, 58 L.Ed.2d 466; *United States v. White,* 869 F.2d 822, 826 (5th Cir.1989); *United States v. Araujo,* 539 F.2d 287, 292 (2d Cir.1976) (quoting *United States v. Thompson,* 476 F.2d 1196, 1201 (7th Cir.1973)); but see *Roberts v. United States,* 445 U.S. 552, 557 n. 4, 100 S.Ct. 1358, 1362 n. 4, 63 L.Ed.2d 622 (1980) (expressing doubt as to whether a "principled distinction" may be drawn on the point)—it is clear from the sentencing transcript that the district judge could not properly be described as enhancing appellant's punishment. Instead, in considering appellant's decision to admit guilt only *after* conviction, the judge merely viewed the appellant's timing as pertinent to the scope of the benefit that he should receive for acceptance of responsibility. The judge decided he should give appellant less of a benefit than he would have allowed an otherwise identical defendant who showed greater acceptance of responsibility by acknowledging his guilt at an earlier stage.

Throughout the sentencing proceeding the district judge focussed on the limited character of appellant's acceptance of responsibility. At the outset he explicitly framed the question at issue as whether the appellant should receive "the *full* benefit of the two-point reduction" in light of his belated admission of guilt. Sentencing Tr. at 3 (emphasis added). He immediately followed up with the observation that the appellant's conduct furnished "a rather meager basis upon which ... [to] conclude that he truly was remorseful and had accepted *full* responsibility." *Id.* at 3 (emphasis added). Accord *id.* ("query whether or not I should give him *full* credit for having accepted responsibility" (emphasis added)). At the end he decided that the appellant deserved a "major portion" of the "benefit" that could be obtained for acceptance of responsibility. *Id.* at 13. Concentrating on whether appellant's conduct was consistent with the sort of remorse or contrition that would justify a full 30-month reduction, the judge decided it was not.

■ Since long before the Guidelines, the law has allowed sentencing judges to show leniency to defendants who demonstrate contrition and acceptance of responsibility for their crimes. See, e.g., *Corbitt v. New Jer-*

*sey*, 439 U.S. 212, 224, 99 S.Ct. 492, 500, 58 L.Ed.2d 466 (1978); *Brady v. United States*, 397 U.S. 742, 751, 90 S.Ct. 1463, 1470–71, 25 L.Ed.2d 747 (1970). The law also has long recognized that a defendant's decision to plead guilty is good evidence of acceptance of responsibility and possibly even sincere remorse. See, e.g., *id.* at 753, 90 S.Ct. at 1471–72 (defendant who pleads "extends a substantial benefit to the State and ... demonstrates by his plea that he is ready and willing to admit his crime and to enter the correctional system in a frame of mind that affords hope for success in [quicker] rehabilitation"); *Alabama v. Smith*, 490 U.S. 794, 802, 109 S.Ct. 2201, 2206, 104 L.Ed.2d 865 (1989); *United States v. McLean*, 951 F.2d 1300, 1303 n. 2 (D.C.Cir.1991). In the absence of what one member of the court at oral argument called a "Remorse-o-meter" to gauge the defendant's level of sincerity, sentencing judges are almost bound—and certainly permitted—to look at a defendant's objective conduct, inferring the greatest remorse, other things being equal, from the promptest acknowledgements of guilt. The whole notion of showing leniency to some deserving defendants—that is, of treating them more mildly than others—requires withholding leniency from others who appear less deserving. Cf. *United States v. Wilson*, 506 F.2d 1252, 1259–60 (7th Cir.1974) ("Although a heavier sentence for one who has been convicted after trial and a lighter sentence for one who pleads guilty are in a sense two sides of the same coin, it is within proper bounds for the court to preserve some leeway so that it is able to extend leniency in consideration of the cooperation and at least superficial penitence evidence[d] by one who pleads guilty").

Reflecting the same principles as the case law, the Sentencing Guidelines identify "voluntary and truthful admission to authorities" and the "timeliness of the defendant's [remorseful or helpful] conduct" as indicia of

acceptance of responsibility and as therefore pertinent to whether the court should allow the defendant the two-point reduction. See U.S.S.G. § 3E1.1, Application Notes 1(c) & 1(g).[2] The Guidelines explicitly tell judges that they normally should deny the two-point reduction to a defendant who does not plead guilty. See *id.*, Application Note 2. Numerous courts considering the matter have upheld the Guideline direction to draw this distinction.[3] See, e.g., *United States v. Parker*, 903 F.2d 91, 105 (2d Cir.1990); *United States v. Frazier*, 971 F.2d 1076, 1086 (4th Cir.1992); *United States v. White*, 869 F.2d 822, 826 (5th Cir.1989) (per curiam); *United States v. Cordell*, 924 F.2d 614, 619 (6th Cir.1991); *United States v. Saunders*, 973 F.2d 1354, 1362 (7th Cir.1992); *United States v. Gonzalez*, 897 F.2d 1018, 1020 (9th Cir. 1990); *United States v. Henry*, 883 F.2d 1010, 1011–12 (11th Cir.1989) (per curiam); see also *Brady*, 397 U.S. at 751, 90 S.Ct. at 1470 (guilty plea not invalid merely because "motivated by the defendant's desire to accept the certainty or probability of a lesser penalty").

■ Despite these principles, there remains the possibility that Jones's sentence might be classified as an impermissible burden placed on the exercise of a constitutional right. But if, as both parties assume and *Corbitt* suggests, a line is to be drawn between the enhancement of a sentence and the withholding of leniency, that line must, in this context anyway, depend on the presence of a baseline. See, e.g., *United States v. Klotz*, 943 F.2d 707, 710 (7th Cir.1991). Here, there can be little doubt that the baseline sentence for Jones was well above the 127 months ultimately imposed.

Once Jones was convicted, he faced a presumptive sentencing range of 151–188 months. One can argue about whether that created a baseline at a point somewhere

---

**2.** All citations to the Guidelines refer to the 1990 version; that version was in effect at the time of Jones's sentencing.

**3.** Although the Supreme Court has made clear that when a legislature devises a sentencing regime it may take account of instrumental considerations such as the systemic benefit of reducing

the number of trials, see, e.g., *Corbitt v. New Jersey*, 439 U.S. at 223, 99 S.Ct. at 499–500; *Brady*, 397 U.S. at 753, 90 S.Ct. at 1471–72, we need not here address whether a judge may do so in imposing a sentence; there is no evidence that the district judge considered such factors in this case.

within the range (and if so where), or whether the baseline is properly perceived as "the range itself". See *Klotz*, 943 F.2d at 710–11. It seems impossible, however, to place any baseline *below* 151 months. And if we take that as our baseline, the sentencing judge appears simply to have given the defendant four-fifths of the possible credit for acceptance of responsibility (24 out of 30 possible months), explaining that if Jones had shown greater evidence of contrition (in this instance by pleading guilty), the judge would have made a greater adjustment.

Jones argues that the proper baseline is 121 months. For this he relies heavily on the judge's observations that the judge disagreed with the mandatory minimum sentence and, indeed, thought that "151 months or, for that matter, a ten-year sentence in the circumstances of a case such as this is barbaric...." Sentencing Tr. at 12. While such an observation might well be relevant in an unstructured world without the Guidelines or mandatory minima, that world is not ours. Accordingly, the judge's comments at sentencing must be understood as explaining (1) his personal belief that a 10–year prison term was overly harsh—a belief that obviously cannot displace the benchmark established by the Guidelines; and (2) his legally relevant (and constitutionally unobjectionable) view that, within the 121–151 month range the judge was bound to work within, Jones's limited remorse deserved only a 24–month reduction.

In arguing for the 121–month baseline, Jones also points us to *United States v. Valencia*, 957 F.2d 153 (5th Cir.1992), where the court overturned a sentencing judge's decision to give a defendant only one point of the two-point reduction authorized by § 3E1.1 for acceptance of responsibility. Appellant argues that *Valencia* stands for the proposition that "[§] 3E1.1 of the Guidelines contemplates a full two level reduction for acceptance of responsibility, and does not contemplate the trial judge taking back a portion of that benefit."

It is difficult to understand how *Valencia* helps appellant's constitutional attack on his sentence. Obviously his formulation of the claim assumes his conclusion; unless the grant of two points for acceptance of responsibility carried with it a promise to sentence at the bottom of the new range, there was nothing for the judge to "take back".

In addition, the interpretation of the Guidelines in *Valencia* was driven by concerns that seem wholly irrelevant here. The court noted that in § 3E1.1 the Sentencing Commission has called upon district courts to make a specific factual determination—whether, in the words of § 3E1.1(a), the defendant has "clearly demonstrate[d]" acceptance of responsibility—a determination that is entitled to "great deference on review." See *id.* at 156 (citing U.S.S.G. § 3E1.1, Application Note 5). The court feared that allowing a one-level reduction would permit district courts to "straddle the fence in close cases without explicitly finding whether the defendant did or did not accept responsibility," and that such straddling would be difficult to evaluate on review. *Id.* The *Valencia* court responded to this concern by telling district courts that in close cases they should deny the reduction altogether; in those cases the defendant has not "clearly demonstrate[d]" acceptance of responsibility. See *id.* None of the concerns invoked by the *Valencia* court supports appellant's claim that a judge is constitutionally barred from considering the belated and limited character of a defendant's acceptance of responsibility when sentencing within the adjusted Guidelines range. In addition, because the judge in *Valencia* sentenced at the top of his completely synthetic range (a sentence of 120 months in a range of 97–121), and thus *above* the top of the range that a two-point reduction would have created, the sentence had no logical root in the Guidelines at all. Here the district judge gave two points and sentenced squarely within the resulting range.

Finally, footnote 4 of *Valencia* affirmatively contradicts Jones's theory. There the court stated that after a district court denies credit for acceptance of responsibility in a close case, the sentencing court is "free to consider (or disregard) the defendant's partial acceptance of responsibility" in choosing a sentence within the regular Guideline range. See *id.* n. 4. Thus, note 4 appears implicitly to adopt the *Klotz* view, *supra*, that

the baseline is the "range itself" and validates consideration of matters of constitutional right even when the court is sentencing within the normal presumptive range. *Valencia* therefore weighs strongly against Jones's notion that once a district judge has considered facts relating to "acceptance of responsibility" for purposes of the two-point reduction, he must never in any way consider them again. Quite the opposite: if the judge may consider elements militating *in favor of* acceptance after he has *denied* acceptance credit, as *Valencia* says, we cannot fathom why he should not be free to consider elements militating *against* acceptance after he *granted* such credit. The Guidelines are rigid enough without courts adding this further note of Procrusteanism.

\* \* \* \* \* \*

When a sentencing judge gives a defendant credit for acceptance of responsibility, the judge may consider the defendant's decision to go to trial as evidence that the defendant's ultimate acceptance may have been half-hearted, and may therefore reduce the sentence less than if the defendant had acknowledged guilt earlier in the process.

The judgment of conviction is

*Affirmed.*

MIKVA, Chief Judge, with whom Judge WALD, Judge HARRY T. EDWARDS, and Judge SENTELLE join, dissenting:

The trial judge, with commendable candor, made crystal clear why Mr. Jones had six months added to his sentence. The judge stated:

> Because . . . the case did go to trial, *I am going to add an additional six months to the guideline sentence* that I intend to impose. . . . I am articulating this so that anybody that wishes to take it to the . . . Court of Appeals may do so. . . . I would like to know whether or not there is *some constitutional error I commit by recognizing that the case was taken to trial, albeit a matter of constitutional right to take the case to trial, rather than acknowledging in advance the guilt that was obviously supported by the proof.*

Sentencing Transcript at 13 (emphasis added).

For reasons that I do not understand, my colleagues in the majority insist on mischaracterizing what the district judge actually did. They insist that the district judge did not *increase* Mr. Jones' sentence because of his failure to plead guilty, but rather gave him *less of the benefit allowable* for acceptance of responsibility. As I discuss below, this may be a distinction without a difference when it comes to the constitutional obligations of a sentencing judge. But in any case, that is not what the trial judge did. He said he was punishing Mr. Jones for going to trial; he did not claim he was withholding leniency. It is as if the majority wants to deny the trial judge the opportunity to get the very guidance that he sought.

If this were some private party seeking an advisory opinion, the majority's reluctance would be understandable. But this is an Article Three trial judge calling for the validation or invalidation of the basis on which he sentenced a defendant in a criminal case. We ought not fudge on such an important decision.

Ironically, this Court, in the vacated majority panel opinion in this case, unhesitatingly recognized that the six months represented "extra" time. *United States v. Jones,* 973 F.2d 928, 933 (D.C.Cir.1992), *vacated in part, reh'g, en banc, granted,* 980 F.2d 746 (D.C.Cir.1992). Obviously, nothing has (or could have) changed in the trial judge's sentencing rationale since the case was heard the first time. We do a disservice to our own district court, and to everyone who considers this case, when we leave dangling the important question as to whether a trial judge can lay on extra time for going to trial.

It is clearly unconstitutional for a trial judge to increase the sentence of a defendant because he chose to go to trial rather than plead guilty. The Supreme Court has stated, "To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort." *Bordenkircher v. Hayes,* 434 U.S. 357, 363, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978). "In a series of cases beginning with *North Carolina v. Pearce* [395 U.S. 711, 23 L.Ed.2d

656] and culminating in *Bordenkircher v. Hayes,* the Court has recognized this basic—and itself uncontroversial—principle." *United States v. Goodwin,* 457 U.S. 368, 372, 102 S.Ct. 2485, 2488, 73 L.Ed.2d 74 (1982).

In light of this fundamental principle, it is unsurprising that this circuit has previously found differential sentencing to be unconstitutional. *Scott v. United States,* 419 F.2d 264, 269 (D.C.Cir.1969) (judge's statement that "[i]f you had pleaded guilty to this offense I might have been more lenient with you" places "clearly impermissible" price tag on the right to fair trial). In *Scott,* Judge Bazelon eloquently explained why sentencing practices like the one under review in this case unacceptably undermine the trial judge's role as an impartial arbiter in the criminal justice system.

It is also worth noting that every other circuit to address the issue has confidently agreed that it is improper for a trial judge, on his own initiative, to impose a harsher sentence on a defendant who chooses to exercise his constitutional right to trial rather than to plead guilty. *United States v. Crocker,* 788 F.2d 802, 809 & n. 3 (1st Cir.1986) ("The judge's remarks on how the presentation of a frivolous case and the ensuing waste of judicial resources could be factors in determining the sentence to be imposed are sufficient to establish that there was a reasonable likelihood of vindictiveness."); *United States v. Hutchings,* 757 F.2d 11, 14 (2d Cir.1985), *cert. denied,* 472 U.S. 1031, 105 S.Ct. 3511, 87 L.Ed.2d 640 (1985) ("The '[a]ugmentation of sentence' based on a defendant's decision to 'stand on [his] right to put the Government to its proof rather than plead guilty' is clearly improper." (quoting *United States v. Araujo,* 539 F.2d 287, 291–92 (2nd Cir.1976))); *United States v. Wright,* 533 F.2d 214, 216 (5th Cir.1976) ("a trial court may not pressure defendants, who have been found guilty following a trial by jury, to confess their guilt prior to the imposition of sentence"); *United States v. Frost,* 914 F.2d 756, 774 (6th Cir.1990) ("[I]t is improper for a district judge to penalize a defendant for exercising his constitutional right to plead not guilty and go to trial, no matter how overwhelming the evidence of his guilt.");

*Hess v. United States,* 496 F.2d 936, 938 (8th Cir.1974) ("This circuit has joined a host of other courts in recognizing that whether a defendant exercises his right to trial by jury to determine his guilt or innocence must have no bearing on the sentence imposed."); *United States v. Monroe,* 943 F.2d 1007, 1018 (9th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1585, 118 L.Ed.2d 304 (1992) ("[W]here a disparity in sentences suggests that a defendant who pleaded not guilty was being penalized for exercising his constitutional right to a trial, the reasons for the disparity must appear in the record."); *United States v. Roe,* 670 F.2d 956, 973 (11th Cir.1982), *cert. denied* 459 U.S. 856, 103 S.Ct. 126, 74 L.Ed.2d 109 (1982) ("[T]he sentencing court may not present the defendant with a choice between admitting his guilt and enduring a harsher sentence for failing to do so.")

These cases, until today unchallenged, recognize the unique role of the judge in the criminal justice system. Unlike the advocate-prosecutor and the policy-making legislature, the judge is a constitutional referee in the criminal case. It is not surprising, therefore, that the Supreme Court has been much more permissive as to the ability of the players other than the judge to plea-bargain, to horse-trade, to create incentives and disincentives for the way in which a criminal defendant plays his constitutional cards. For example, in *Bordenkircher v. Hayes,* 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978), the Court allowed a prosecutor to reindict a defendant under a habitual offender statute carrying a mandatory life sentence after the defendant refused to plead to lesser charges carrying a range of two-to-ten years. In *United States v. Goodwin,* 457 U.S. 368, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982), the Court upheld a similar action by a prosecutor who charged a defendant with a felony after he had refused to plead guilty to a misdemeanor charge and demanded a jury trial. The Court held that there was no presumption of vindictiveness in such a situation. *Id.* at 384, 102 S.Ct. at 2494.

In *Corbitt v. New Jersey,* 439 U.S. 212, 99 S.Ct. 492, 58 L.Ed.2d 466 (1978), the Court held that legislatures may encourage the entry of guilty pleas by promulgating statutory

schemes that permit judges to reduce sentences for defendants who plead guilty. In that case, the Court upheld a New Jersey law that required a life sentence for first degree murder when the defendant went to trial, but permitted the judge to impose a lower sentence if he pleaded *non vult* or *nolo contendre*. Significantly, the Court likened the situation in *Corbitt* to cases involving plea bargaining by prosecutors, observing "[t]here is no difference of constitutional significance between *Bordenkircher* and this case." *Id.* at 221, 99 S.Ct. at 498. As suggested by Justice Stewart in his concurrence, by relying on the plea bargaining cases, the majority implicitly equated the roles of the state legislature and the prosecutor in the criminal justice system. *Id.* at 227–28, 99 S.Ct. at 501–02 (Stewart, J., concurring). The majority recognized that both legislatures and prosecutors may legitimately encourage guilty pleas and facilitate plea bargaining.

The Court, however, has never suggested that sentencing judges may, on their own initiative and without statutory authority, promote guilty pleas by increasing the sentences of defendants who insist on going to trial. In *Alabama v. Smith*, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989), the Court permitted a judge to impose a greater sentence after trial than he had imposed following a guilty plea that the defendant successfully challenged, but only because the judge acquired additional sentencing information during trial that led him to be less lenient. *Id.* at 801, 109 S.Ct. at 2205–06. As the circuits have unanimously acknowledged, when a judge increases a defendant's sentence specifically *because* he pleaded guilty, the constitutional concerns are serious.

Why should prosecutors and legislatures be permitted to use the threat of greater sentences to discourage defendants from going to trial, whereas judges cannot do the same? As I mentioned above, the answer lies in the different functions that these governmental actors play in our system of justice. One distinction between them is the degree of power they possess in relation to defendants. When prosecutors and defendants engage in plea negotiations, they "arguably possess relatively equal bargaining power." *Bordenkircher v. Hayes*, 434 U.S. at 362, 98 S.Ct. at 667. This equality is rooted in their "mutuality of advantage;" each party has reasons for wanting to avoid trial. *Id.* at 363, 98 S.Ct. at 668.

The power distribution between defendants and sentencing judges is much more uneven. In *Scott*, this Court noted the "unequal positions of the judge and the accused, one with the power to commit to prison and the other deeply concerned to avoid prison." *Scott v. United States*, 419 F.2d at 273 (quoting *United States ex rel. Elksnis v. Gilligan*, 256 F.Supp. 244, 254 (S.D.N.Y.1966)). In upholding the prosecutor's role in plea bargaining, the Supreme Court has emphasized the "give-and-take negotiation" between parties with similar bargaining power. *Bordenkircher v. Hayes*, 434 U.S. at 362, 98 S.Ct. at 667. It is hard to see the analogy between the judge's role in sentencing and the prosecutor's role in plea bargaining. By the time a case reaches the sentencing stage, the trial is over and the defendant has been found guilty. What does he have left to offer the judge in exchange for mercy? Differential sentencing does not appear to be a bargain made on equal terms. Instead, it looks much more like the "unilateral imposition of a penalty upon a defendant who has chosen to exercise a legal right" that the *Bordenkircher* Court explicitly rejected as unconstitutional. 434 U.S. at 362, 98 S.Ct. at 667.

There is also a critical difference between the prosecutor's role as an advocate for the government's position and the judge's role as an impartial arbiter and protector of the defendant's rights. This contrast has been repeatedly recognized in various contexts. For example, the Supreme Court has consistently held that it is not necessarily unconstitutional for a statute to offer financial incentives to a prosecutor for successful prosecutions, even though similar incentives would automatically disqualify a judge.

The rigid requirements ... designed for officials performing judicial or quasi-judicial functions, are not applicable to those acting in a prosecutorial ... capacity.... Prosecutors need not be entirely "neutral and detached[.]" In an adversary system, they are necessarily permitted to be zeal-

ous in their enforcement of the law.... [T]he strict requirements of neutrality cannot be the same for administrative prosecutors as for judges, whose duty it is to make the final decision and whose impartiality serves as the ultimate guarantee of a fair and meaningful proceeding in our constitutional regime.

*Marshall v. Jerrico, Inc.,* 446 U.S. 238, 248–50, 100 S.Ct. 1610, 1616–17, 64 L.Ed.2d 182 (1980) (citation omitted).

A judge has a duty not only to remain impartial, but also actively to guard the defendant's constitutional rights. He steps outside his proper role when he piles extra time on a defendant for exercising his right to a trial, no matter how compelling the government's countervailing interest in conserving resources may be. "It is important not only that a trial be fair in fact, but also that the defendant believe that justice has been done. The accused may fairly doubt this if he thinks the judge begrudges him the exercise of his right to trial." *Scott v. United States,* 419 F.2d at 273.

Like the contrast between prosecutors and judges, the distinction between the political function of legislatures and the neutral and protective role of judges reaches back to the origins of American legal history. Legislatures, like prosecutors, are not required to adopt a neutral stance on the issue of guilty pleas. They are policymaking bodies, not impartial arbiters. In the name of efficiency, legislatures are permitted to pass laws that encourage defendants to plead guilty rather than demand a trial. *Corbitt v. New Jersey,* 439 U.S. 212, 99 S.Ct. 492, 58 L.Ed.2d 466 (1978).

These laws may grant to judges some discretion in deciding whether to impose lesser sentences on defendants who plead guilty. *Id.* Because the judges' authority to do so is ultimately rooted in the *legislature's* determination to favor guilty pleas, however, the judges may participate in such a scheme without being seen as the source of a policy to discourage trials. On the other hand, when, as in this case, a judge *without* legislative authorization, guided and restrained by nothing more than his own whims and policy preferences, punishes a defendant for declin-

ing to plead guilty, he treads outside the proper function of the judicial office.

In the present case, the district judge plainly lacked statutory authorization to increase Mr. Jones' sentence in response to his failure to plead guilty. The Sentencing Guidelines (1990 version) permit a sentencing judge to reduce a defendant's offense level by two points if the defendant demonstrates an acceptance of responsibility for his criminal conduct. U.S.S.G. § 3E1.1. A guilty plea is one factor that the judge may consider in deciding whether the defendant in fact accepted responsibility for the purposes of this section. *See id.,* Application Note 3. However, nowhere do the Guidelines authorize the sentencing judge, after granting the two-point reduction, to consider a defendant's choice to go to trial when he sets the actual sentence within the appropriate guideline range. When the district judge "added" six months to Mr. Jones' sentence because he did not plead guilty, he was doing so entirely on his own initiative, and was thus overstepping the limits our criminal justice system imposes on the actions of judges.

As I have intimated throughout this opinion, the district judge's actions were likely improper even if he did precisely what the majority contends he did. In other words, it probably does not matter whether the judge was enhancing Mr. Jones' punishment or denying him leniency. The judge was not permitted to do either if he did so explicitly and exclusively because of Mr. Jones' refusal to plead guilty. In the absence of statutory authorization, a judge transgresses his proper function when he in any way varies the sentence he imposes based on whether the defendant has asserted his constitutional right to trial. While in some contexts, such as plea bargaining, the distinction between punishment and denial of leniency may have some real weight, *see Corbitt v. New Jersey,* 439 U.S. at 223–24, 99 S.Ct. at 499–500, any attempt to discern a meaningful difference between them in the context of a sentencing hearing can only induce vertigo.

But in any event, that is not the problem that the district court sent to us for analysis. The district judge clearly stated that he wished to know whether he could constitu-

tionally "add" six months to Mr. Jones' sentence because Jones insisted on taking the case to trial. We should answer with a vigorous "no" rather than with the fudge the majority provides. I dissent.

WALD, Circuit Judge, dissenting:

I write separately to suggest that the language and structure of the Sentencing Guidelines themselves reinforce or even dictate the impermissibility of using the defendant's election to go to trial as a reason for placing him at a higher point in the Guidelines range, and thus giving him a longer sentence than he would have otherwise received. The precise question raised by the appeal is whether a sentencing judge, after granting a defendant a two-level reduction for acceptance of responsibility, may impose a higher sentence within the Guidelines range than he otherwise would on the explicit and sole ground that the defendant exercised his constitutional right to go to trial. In my view, the Guidelines say "no." First, although the Guidelines do allow the sentencing judge to take into consideration the defendant's decision to plead guilty as positive evidence in his favor when granting an acceptance of responsibility credit, they do not permit the defendant's choice to proceed to trial to be used as *negative* evidence against him either in denying an acceptance of responsibility credit altogether or in placing him at a higher point in the Guidelines range after the credit has been granted. Second, the Guidelines do not anticipate that a defendant, having gone to trial, who has nonetheless been found to have "clearly" manifested acceptance of responsibility and is thereby eligible for a two-level reduction, can subsequently be penalized within the Guidelines range for not having "fully" accepted responsibility by going to trial and therefore given a higher sentence than he would otherwise receive. The majority's insertion of "fully" as an additional requirement to "clearly" in the acceptance of responsibility guideline is a judicial creation—pure and simple—and undermines the Guidelines structure and policy for considering the effect of guilty pleas on sentencing. I therefore conclude that the district court misapplied the Guidelines in explicitly sentencing Jones to an additional six months because he exercised his Sixth Amendment right to a trial.

## A. The Exercise of the Right to a Trial

Since 1987 the Guidelines have dramatically altered the way in which judges sentence defendants, introducing controversial changes that have been attacked on grounds of basic unfairness, usurpation of needed discretion on the part of the sentencing judges, and the imposition of time-consuming and complicated requirements on the criminal process itself. *See* Daniel J. Freed, *Federal Sentencing in the Wake of Guidelines: Unacceptable Limits on the Discretion of Sentencers,* 101 YALE L.J. 1681 (1992); Gerald F. Uelmen, *Federal Sentencing Guidelines: A Cure Worse Than the Disease,* 29 AM.CRIM. L.REV. 899 (1992); Albert W. Alschuler, *The Failure of Sentencing Guidelines: A Plea for Less Aggregation,* 58 U.CHI.L.REV. 901 (1991); FEDERAL COURTS STUDY COMMITTEE, REPORT ch. 7, at 133–40 (1990). At least until today it seemed clear, however, that one aspect of traditional sentencing law was not changed by the Guidelines—the notion that defendants who exhibited remorse and acceptance of responsibility for their crimes by pleading guilty could be given more lenient treatment, but, at the same time, defendants could not be penalized for opting to go to trial. This dividing line may seem exquisitely refined, but it has nonetheless endured in our jurisprudence, and it has had practical consequences in particular cases. A sentencing judge in pre-Guidelines days could not say, "I would have given you five years if you didn't go to trial, but since you did, I will give you seven," but he could say, "Although I might otherwise have given you seven years, I am giving you only five years because you are remorseful, as shown, in part, by your willingness to plead guilty." In the first case, the judge has arrived at a benchmark sentence he believes just in all respects, but then added an extra increment because the defendant has burdened the system by going to trial. In the second case, the judge is according a measure of leniency by viewing the guilty plea as evidence of acceptance of responsibility and, as such, worthy of consideration. There is an important difference

between the two cases and that difference is critical for purposes of this appeal. For, in promulgating the Guidelines, the United States Sentencing Commission ("Commission") sought to essentially replicate this practice, but to minimize even further the likelihood that a defendant could be penalized for exercising a constitutional right.

Thus, the Guidelines explain that "inasmuch as those who *pleaded guilty* under pre-guidelines practice often received lesser sentences, the guidelines permit the court to impose lesser sentences on those defendants who *accept responsibility* for their misconduct." U.S.S.G. Ch. 1, Pt. A at 4(g) (policy statement) (emphases added). It is noteworthy that the Commission rejected an automatic sentence reduction for all defendants who plead guilty in favor of a discretionary two-point offense level reduction, available to both defendants who plead guilty and those who go to trial. In so doing, it provided for the traditional guilty plea/leniency notion to be taken into account in a wider context, *i.e.,* an "acceptance of responsibility" two-level reduction. *See* William W. Wilkins, Jr., *Plea Negotiations, Acceptance of Responsibility, Role of the Offender, and Departures: Policy Decisions in the Promulgation of Federal Sentencing Guidelines*, 23 WAKE FOREST L.REV. 181, 191–92 (1988). Indeed, the Commission's decision *not* to limit the reduction to defendants pleading guilty was motivated, in part, by its desire to avoid the constitutional dilemma of appearing to inflict a fixed penalty on defendants insisting upon a trial. *See* Dan Freed & Marc Miller, *Plea Bargained Sentences, Disparity and "Guideline Justice"*, 3 FED. SENTENCING REP. 175, 176 (1991); Stephen Breyer, *The Federal Sentencing Guidelines and the Key Compromises Upon Which They Rest*, 17 HOFSTRA L.REV. 1, 28–29 (1988).

Accordingly, the 1990 Guidelines direct the sentencing judge to reduce the offense level by two "[i]f the defendant *clearly* demonstrates a recognition and affirmative accep-tance of personal responsibility for his criminal conduct." U.S.S.G. § 3E1.1(a) (emphasis added). It continues that a "defendant may be given consideration under this section *without regard* to whether his conviction is based upon a guilty plea or a finding of guilt by the court or jury or the practical certainty of conviction at trial," *id.* at § 3E1.1(b) (emphasis added), and that a "defendant who enters a guilty plea is not entitled to a sentencing reduction under this section as a matter of right," *id.* at § 3E1.1(c). Although the commentary, in providing a nonexhaustive list of factors for the sentencing judge to consider in deciding whether the acceptance of responsibility discount is warranted, does state that ordinarily the "adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse," it also makes clear that going to trial does not disqualify a defendant from the reduction where, for instance, her pretrial conduct clearly evinces acceptance of responsibility. *Id.* at Application Note 2. Finally, the commentary notes that a defendant who pleads guilty may be denied the credit where other "conduct of the defendant ... is inconsistent with ... acceptance of responsibility." *Id.* at Application Note 3.[1] In sum, extrapolating from pre-Guidelines practice, § 3E1.1 treats a plea of guilty as a "positive" factor that may help to qualify a defendant for a two-level discount. But the Guidelines emphatically do not envision treating a defendant's exercise of his constitutional right to go to trial as a "negative" factor sufficient by itself either to disqualify him from an acceptance of responsibility credit or *even to be weighed against other positive evidence "clearly" demonstrating an acceptance of responsibility.* Exercise of a constitutional right was meant to be a *neutral* factor in the calculus.

In *United States v. Watt,* 910 F.2d 587, 592 (9th Cir.1990), the Ninth Circuit so read

---

[1]. The district courts have adhered to the rule that pleading guilty does not automatically qualify a defendant for the two-level reduction and conviction at trial does not necessarily preclude it. In 1989, 85% of defendants who pled guilty and 20% of defendants who went to trial re-ceived the adjustment, and in 1990, the figures were 90% and 21%, respectively. *See* Ilene H. Nagel & Stephen J. Schulhofer, *A Tale of Three Cities: An Empirical Study of Charging and Bargaining Practices Under the Federal Sentencing Guidelines,* 66 S.CAL.L.REV. 501, 531 (1992).

§ 3E1.1, holding that "in determining a defendant's acceptance of responsibility, a sentencing court cannot consider against a defendant any constitutionally protected conduct." In a subsequent case, the court reiterated that

> the district court may deny the reduction because of a lack of contrition despite the increased costs imposed upon the defendant's choice to remain silent or to proceed to trial, but may not deny the reduction because of that choice in spite of other manifestations of sincere contrition.

*United States v. Sitton*, 968 F.2d 947, 962 (9th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 478, 121 L.Ed.2d 384 (1993); *see also United States v. Gonzalez*, 897 F.2d 1018, 1020 (9th Cir.1990) (denial of § 3E1.1 credit was based on defendant's conduct at trial, not choice to go to trial). The Eleventh Circuit is in agreement with this interpretation:

> [I]f a defendant has shown some sign of remorse but has also exercised constitutional or statutory rights, the sentencing judge may *not* balance the exercise of those rights against the defendant's expression of remorse to determine whether the "acceptance" is adequate.

*United States v. Rodriguez*, 959 F.2d 193, 197 (11th Cir.) (emphasis in original), *cert. denied*, —— U.S. ——, 113 S.Ct. 649, 121 L.Ed.2d 563 (1992). In a similar vein, the commentary to § 3C1.1, which provides for a two-level enhancement where a defendant obstructs or impedes the investigation or prosecution of his case, explains:

> This provision is not intended to punish a defendant for the exercise of a constitutional right. A defendant's denial of guilt (other than a denial of guilt under oath that constitutes perjury), refusal to admit

guilt or provide information to a probation officer, or *refusal to enter a plea of guilty* is *not* a basis for application of this provision.

U.S.S.G. § 3C1.1 at Application Note 1 (emphases added). Thus, the structure and policy of the Guidelines allow the fact of a guilty plea to count as nonconclusive *evidence of* acceptance of responsibility, but do not permit the mere exercise of a constitutional right to be counted *against* a defendant in awarding the acceptance credit or in other aspects of sentencing.[2] It seems to me inevitable that the same reasoning must apply when determining where to sentence a defendant within the applicable range after granting an acceptance of responsibility adjustment.

Section 1B1.4 of the Guidelines does say expansively that in setting a sentence within a Guidelines range a district court "may consider, without limitation, any information concerning the background, character and conduct of the defendant, *unless otherwise prohibited by law*." U.S.S.G. § 1B1.4 (emphasis added); *see* 18 U.S.C. § 3661. Thus, within Jones' Guidelines range of 121 to 151 months, the district court may well have been free to impose the rock-bottom 121 months on the basis of particularly impressive evidence of acceptance of responsibility that went beyond the "clear" expression required by the Guidelines or on the basis of other legitimate factors. Under the Guidelines structure, however, the judge was prohibited from imposing a higher sentence than he otherwise would, solely because the defendant went to trial. Election to go to trial is a factor "otherwise prohibited by law," *i.e.*, the Constitution and the Guidelines themselves; and it may not be used, as the majority allows, to demonstrate negatively the defendant's failure to "fully" accept responsibility.[3]

---

**2.** The 1992 Guidelines commentary to § 6B1.2, concerning plea agreements, also suggests that the Commission intended to cabin consideration of a defendant's decision to plead guilty to the determination whether to grant the discount in the first instance. It states that a "defendant who enters a plea of guilty in a timely manner will enhance the likelihood of his receiving a reduction in offense level under § 3E1.1 ... [but] [f]urther reduction in offense level (or sentence) due to a plea agreement will tend to undermine the sentencing guidelines." U.S.S.G. § 6B1.2

(policy statement); *see also United States v. Dukes*, 936 F.2d 1281, 1282–83 (D.C.Cir.1991) (Guidelines take into account guilty pleas by § 3E1.1 reduction; therefore, further downward departure because defendant pled guilty not warranted).

**3.** For instance, a sentencing judge is prohibited by law from considering a defendant's race when establishing the applicable Guidelines range. *See* U.S.S.G. § 5H1.10. Therefore, this same factor cannot be weighed, pursuant to § 1B1.4,

The sentencing judge cannot be allowed, at any point, to take sentencing action based upon a defendant's exercise of his constitutional right to a trial. This Guidelines policy of neutrality transcends the elusive distinction between denying a benefit and imposing a penalty employed by the majority to justify its contrary conclusion. Whether the district court, as here, explicitly raised Jones' sentence because he went to trial or denied Jones a shorter sentence for the same reason is irrelevant because his constitutional right was burdened either way; his constitutional choice in and of itself led to a higher sentence. I do not believe the Guidelines intended any such result, but in fact, strove to avoid it.

Of course the acceptance of responsibility concept embraced by the Commission cannot be altogether divorced from a defendant's constitutional choice to plead guilty or go to trial. For example, a defendant who goes to trial may find it difficult to show by extrinsic evidence that his acceptance of responsibility is "timel[y]," a factor identified as relevant in the commentary. U.S.S.G. § 3E1.1 at Application Note 1(g).[4] However, the Government's contention that prohibiting sentencing judges from counting *the act of choosing to go to trial* against the defendant would require "unrealistic feats of mental gymnastics," Government's Brief at 29, is not right, as the Ninth and Eleventh Circuit rulings show. If the defendant can provide other affirmative (and timely) evidence of acceptance of responsibility, the fact that he opted for trial cannot be the basis for denying § 3E1.1 credit or—I would find as well—moving higher within the applicable Guidelines range after granting the credit. In any event, determining under the majority's test whether a judge's action is properly consid-

ered as the imposition of a penalty or the denial of a benefit seems a far more confusing exercise.

I also disagree with the government that drawing the distinction used by the Ninth and Eleventh circuits will "ensure a lack of candor in sentencing." Government's Brief at 28–29. If anything, the majority's approach would seem more likely to run this risk. The foundation of the majority opinion is the shaky penalty/benefit distinction, which even the majority only "assum[es]" to be valid. *See* Majority Opinion at 1477. Under the majority's view, the sentencing judge may say, "I am lowering your sentence by only 24 of a possible 30 month reduction because you chose to go to trial," but may not say, "I am raising your sentence from the full 30 month reduction by 6 months because you chose to go to trial." Surely that formulaic distinction is not productive of judicial candor. On the other hand, forbidding sentencing judges from weighing a defendant's exercise of constitutional rights negatively in any context, before or after an acceptance of responsibility adjustment, more faithfully preserves the constitutional neutrality of the Guidelines scheme.

B. *The Impermissible Distinction Between "Clear" and "Full" Acceptance of Responsibility*

There is a second reason why I believe the district court (and the majority) misapplied the Guidelines here. Section 3E1.1 directs a district court to grant a two-level reduction only where the defendant has met his burden of "clearly" demonstrating acceptance of responsibility. The use of the word "clearly" requires the district court to decide if *all* the relevant evidence, including a guilty plea (but

---

in determining the precise sentence within the range.

**4.** As previously noted, the commentary to § 3E1.1 provides that the two-level adjustment is not ordinarily "intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." *See* § 3E1.1 at Application Note 2. This is not an instruction to the judge to count against a defendant *the fact* that he elected to go to trial. If it were so intended, it

would simply read: "The adjustment is not intended for defendants who elect to go to trial." Rather, the language of the commentary reflects a recognition that a defendant who proceeds through the trial process will frequently be unable to demonstrate timely or sincere contrition sufficient to meet the standard of clear acceptance of responsibility. The commentary goes on to explain that in some cases a defendant's "pretrial statements and conduct" can provide the necessary evidence of acceptance of responsibility. *Id.*

excluding going to trial) demonstrates that acceptance of responsibility has been achieved. "Clearly" means "free from obscurity or ambiguity," "unmistakable," "free from doubt," and "unhampered by restriction or limitation." WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 247 (1984). "Full" also means "lacking ... qualification." *Id.* at 497. Is there really a difference here? Can a judge find a defendant "clearly" accepted responsibility for a two-level credit, but did not accept it "fully" enough so that he can be given a lower sentence in the Guidelines range? As discussed above, a defendant who goes to trial may indeed find it difficult to demonstrate sufficient contrition by other evidence for a court to conclude that he "clearly" accepted responsibility. Here, for reasons not enunciated, the judge must have found sufficient outside evidence of clear acceptance in order to grant the two-level adjustment. However, in the next breath, he undercut his own findings by expressing doubt whether Jones "truly was remorseful and had accepted full responsibility." As a result, he denied Jones "full credit for acceptance of responsibility" by sentencing him to a point higher within the applicable range than he otherwise would have had Jones pled guilty and thereby exhibited fuller repentance. In today's decision, the majority goes along with that "split the baby" practice. I do not believe the Guidelines structure allows it.

To arrive at his sentence, the district court in effect had to conclude that *despite the fact Jones went to trial,* his acceptance of responsibility was "clear," but at the same time, *the fact he went to trial* means his acceptance was not "full." Nothing in the Guidelines authorizes such a distinction on the part of the sentencing judge. If Jones' acceptance of responsibility was not "full" or "true," it is hard to see how it could have been deemed "clear." On the basis of similar reasoning, the Fifth Circuit, in *United States v. Valencia,* 957 F.2d 153, 156 (5th Cir.1992), held that the district court could not grant the defendant a one-level reduction under § 3E1.1 for *partial* acceptance of responsibility. Instead, where remorse is not clear "the better course under the sentencing guidelines appears to be for the district court to

deny the reduction on the theory that in such a close case the defendant has not *clearly* demonstrated acceptance of responsibility." *Id.* at 156 (emphasis added). That analysis seems reasonable and should apply in this case.

I agree with Chief Judge Mikva that the majority has gone out of its way to find in the record a different case from the one initially decided by the district court (and the original panel) in order to try to avoid a troublesome constitutional conflict. In so doing, however, it has introduced an unsatisfying and inconsistent new criterion into the already over-complicated Guidelines scheme. The Guidelines express in several places and in their overarching policy, an intention that sentencing courts not weigh *against* a defendant the fact that he has exercised the constitutional right to a trial. This must be as true in establishing the appropriate sentence within the applicable Guidelines range as it is in determining eligibility for an acceptance of responsibility adjustment. Other circuits have construed the Guidelines to incorporate this distinction so as to avoid constitutional infirmities. *See Sitton,* 968 F.2d at 962; *Rodriguez,* 959 F.2d at 197; *Watt,* 910 F.2d at 592; *see generally United States v. Security Industrial Bank,* 459 U.S. 70, 78, 103 S.Ct. 407, 412, 74 L.Ed.2d 235 (1982) (describing this canon of construction). We should do likewise. Additionally, by requiring "clear" acceptance of responsibility for a reduction, I believe the Guidelines do not envision any further increase in a sentence because the "clear" acceptance was not "full" enough. In sum, the majority's dependence upon the slippery penalty/benefit distinction in this case—even if it were supportable on this record, and I do not think it was—introduces further confusion and word-play into an already overwhelmed sentencing structure.

I respectfully dissent.

SENTELLE, Circuit Judge, dissenting:

I join Chief Judge Mikva in dissenting from the Court's decision in this case, and am in accord with most of Chief Judge Mikva's opinion supporting his dissent. I cannot,

however, agree with the statement expressed in his penultimate paragraph and intimated earlier in his opinion that "it probably does not matter whether the judge was enhancing Mr. Jones' punishment or denying him leniency. The judge was not permitted to do either if he did so explicitly and exclusively because of Mr. Jones' refusal to plead guilty." Dissenting opinion of Chief Judge Mikva at 1483. I find this statement too sweeping, as well as unnecessary to the disposition of this case.

I agree with the majority that " 'it is within proper bounds for the court to preserve some leeway so that it is able to extend leniency in consideration of the cooperation and at least superficial penitence evidence[d] by one who pleads guilty.' " Maj. op. at 1478, quoting *United States v. Wilson*, 506 F.2d 1252, 1259–60 (7th Cir.1974). However, I cannot join the majority's result, because I share Chief Judge Mikva's conclusion that the trial court in this case was not withholding a reward it would have given to a guilty pleader, but was rather extending a punishment to one who pleaded not guilty. I further agree with Judge Mikva that this was the plain import of the record and the panel opinion.

It was on this assumption, as I understood it at the time, that we granted *en banc* review to what would have been a much less remarkable case had the transcript reflected what the majority now finds in it. Indeed, it would seem to me that if the majority reads the records as differently from the panel's reading as it appears to, rather than affirming the District Court, we should vacate and remand for clarification of which of those readings is correct.

Aside from this single reservation, I join Chief Judge Mikva in dissent.