**UNITED STATES of America**

v.

**Daniel BERRIOS, Defendant.**

**Crim. A. No. 93–195 (CRR).**

United States District Court,
District of Columbia.

Aug. 10, 1993.

*MEMORANDUM OPINION*

CHARLES R. RICHEY, District Judge.

The Defendant, Daniel Berrios, has moved to suppress evidence arising from the improper seizure of the Defendant by law enforcement officials aboard an Amtrak train during a stopover at Union Station, Washington, D.C., on April 13, 1993. The Government opposes this Motion. The Court heard testimony from two of the officers involved as well as the Defendant, together with oral argument on the Motion on July 22, 1993. Upon consideration of the pleadings, the record herein, and the applicable law, the Court

must grant the Defendant's Motion. The evidence presented at the hearing indicates that the Defendant was "seized" within the meaning of the Fourth Amendment during the time he was questioned, and the Government concedes that the police officers had neither probable cause nor a reasonable suspicion to believe that a crime had been or was being committed at the time of the seizure. This Memorandum Opinion shall constitute the Court's findings of fact and conclusions of law as required by Fed.R.Civ.P. 12(e). *See United States v. Williams*, 951 F.2d 1287 (D.C.Cir.1991).

After the Court granted the Defendant's Motion to Suppress in open court on July 22, 1993, the Court gave leave to the Government to file a Motion for Reconsideration. As of this date, no Motion for Reconsideration has been filed. The Government stated at the conclusion of the hearing that it could not go forward with its prosecution and moved to dismiss the Indictment, which was granted by the Court.

## I. *BACKGROUND*

On April 13, 1993, the Defendant, Daniel Berrios, was on a train from New York bound for Newport News, Virginia. The train stopped at Union Station, Washington, D.C., for a scheduled layover. On that day, Detective John Centrella and other members of the Metropolitan Police Department's Narcotics Interdiction Squad were questioning individuals on trains stopped at Union Station. Detective Centrella and two other officers entered the train car in which the Defendant was sitting after those passengers with a Washington destination had exited the train. Between ten and fifteen passengers, including Berrios, remained on the train car. Centrella approached Berrios, who was seated in a window seat. Centrella admitted that, at the time he approached Berrios, he did not know the Defendant's name, intended destination, background, or anything that might raise suspicion about Berrios.

Centrella introduced himself and showed his identification to Berrios. After explaining that he was part of a team that was designed to intercept drugs and drug couriers, he asked Berrios whether he had any luggage. At this point, the testimony of Centrella and Berrios conflict, requiring the Court to evaluate the credibility of each. Berrios testified that, when asked by Centrella if he had any luggage, he attempted to get up, retrieve his luggage, and exit the train car. However, when he attempted to stand, Centrella instructed Berrios in a forceful voice to sit down. Centrella then picked up the Defendant's bag and said "you don't mind if I go through this, do you?" Centrella then opened the bag without waiting for an answer. Upon opening the bag, Centrella found the Defendant's ticket stub, a gun, and some ammunition. During this time, Centrella was standing so as to block the aisle and prevent Berrios from leaving his seat.

Centrella set out a different course of events, claiming that Berrios never tried to leave, and that he gave his consent to have his suitcase searched. The parties agree that the Defendant was ultimately arrested by Centrella and taken to a police station. At the station, the Defendant was searched and an amount of crack cocaine was found. The Defendant now seeks to suppress the gun, ammunition, and drugs as the fruits of an illegal seizure.

## II. *BECAUSE THE POLICE SEIZED THE DEFENDANT WITH NEITHER PROBABLE CAUSE NOR A REASONABLE SUSPICION TO BELIEVE THAT THE DEFENDANT WAS INVOLVED IN A CRIME, THE EVIDENCE OBTAINED FROM THAT ILLEGAL SEIZURE MUST BE SUPPRESSED.*

The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated...." Police officers must, whenever practicable, obtain a warrant prior to seizing items or individuals. *See Terry v. Ohio*, 392 U.S. 1, 20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968); *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). An individual is "seized" by law enforcement individuals when, "taking into account all of the circumstances sur-

rounding the encounter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" *Florida v. Bostick*, —— U.S. ——, ——, 111 S.Ct. 2382, 2387, 115 L.Ed.2d 389 (1991) (quoting *Michigan v. Chesternut*, 486 U.S. 567, 569, 108 S.Ct. 1975, 1976, 100 L.Ed.2d 565 (1988)).

■ The Court must look to all of the objective circumstances of the encounter to determine whether a seizure took place. Such factors can include the time of day, the place where the incident occurred, the officer's tone of voice, any threats or physical intimidation by the officer, and any other indicia of whether a reasonable person would have felt free to leave. *United States v. Lewis*, 921 F.2d 1294, 1297 (D.C.Cir.1990). In this manner, the Court can determine whether police officers have thrown "their official weight around unduly" while questioning individuals whom the officers have *no* reason to suspect have committed any crimes. *United States v. Tavolacci*, 895 F.2d 1423, 1425 (D.C.Cir.1990).

■ In this case, the Government conceded during the hearing on this matter that a question of credibility is involved, and that if the Court finds the Defendant to be more credible than the Government's witnesses, the Defendant's Motion to Suppress must be granted. In this case, the Court finds the testimony of the Defendant to be more credible and concludes that the Defendant was seized for purposes of the Fourth Amendment because, under the circumstances, a reasonable person would not have felt free to leave the train car.

The evidence is undisputed that three police officers entered the train car in which Berrios was sitting, that Detective Centrella approached Berrios, and that another officer took a position about 15 feet away from Berrios.[1] The Court credits the Defendant's testimony that Detective Centrella placed himself in such a position as to block the aisle, and that he instructed the Defendant to sit down after the Defendant attempted to leave. This conduct constitutes a kind of intimidation and restraint, and is a significant factor the Court must consider in deciding whether the Defendant was seized for purposes of the Fourth Amendment. *United States v. Jones*, 973 F.2d 928, 930 (D.C.Cir. 1992), *aff'd on reh'g*, 997 F.2d 1475 (D.C.Cir. 1993) (en banc affirmance of sentencing issue raised in the case).

Furthermore, Centrella admitted that at no time did he advise Berrios of his right to leave the scene. Although not dispositive, the absence of such a warning is further evidence of the coercive nature of the confrontation. *See Florida v. Royer*, 460 U.S. 491, 503, 103 S.Ct. 1319, 1327, 75 L.Ed.2d 229 (1983); *United States v. Battista*, 876 F.2d 201, 207 (D.C.Cir.1989). Finally, the forceful manner in which Centrella instructed Berrios to sit down clearly would have discouraged a reasonable person from attempting to leave. *United States v. Savage*, 889 F.2d 1113, 1116–17 (D.C.Cir.1989). All of these factors indicate that the police were not engaged in a consensual exchange with Berrios; rather, Berrios was detained by the police and was not free to break off the questioning of Detective Centrella.

Because the Court finds that the Defendant was seized during the course of questioning by Detective Centrella, the Court must consider whether Centrella or the other officers had probable cause or reasonable suspicion to justify the seizure. *Id.* at 1118. The Court need go no further than the Government's brief, wherein the Government concedes that "the police lacked probable cause or reasonable suspicion to detain [the] defendant prior to the discovery of the gun in his suitcase." Government's Opposition to Defendant's Amended Motion to Suppress Physical Evidence, at n. 1. In view of Detective Centrella's testimony that he knew absolutely nothing about Berrios at the time Centrella approached him, the Court must agree with the Government's concession. *See United States v. Reid*, 997 F.2d 1576, 1580 (D.C.Cir.1993) (Wald, J., dissenting).

1. The Court notes that although the second officer testified that she was watching Detective Centrella and Berrios as well as the third police officer, who was questioning another passenger, she stated that she was not close enough to hear the conversation between Centrella and Berrios.

Finally, the Court notes that the search of the suitcase which took place after Berrios was unlawfully detained was obviously not the result of voluntary consent. The seizure of the Defendant was "so infected with the show of police authority that no consent [to search his suitcase] would be possible." *United States v. Battista,* 876 F.2d 201, 206 n. 7 (D.C.Cir.1989). Furthermore, the testimony of Berrios, which the Court finds to be credible, indicated that Detective Centrella began opening the suitcase without waiting for the consent of Berrios.

### III. *CONCLUSION*

As the Government admitted during the suppression hearing, the question in this case is one of credibility, and the Court finds that the events of April 13, 1993, occurred as recounted by the Defendant. The conduct of the police went beyond merely approaching the Defendant. Officer Centrella and his fellow officers treated the Defendant in such a way as to make a reasonable person believe that he or she was not free to leave, thereby seizing the Defendant for purposes of the Fourth Amendment. Because the Government concedes that the officers lacked probable cause or a reasonable suspicion to justify that seizure, the Court must suppress whatever evidence was produced from the involuntary search that occurred thereafter. The court shall enter an Order of even date herewith consistent with the foregoing Memorandum Opinion.

### *ORDER*

Upon consideration of the pleadings, the record herein, and the applicable law, and for the reasons expressed in this Court's Memorandum Opinion of even date herewith, it is, by the Court, this 10 day of August, 1993,

ORDERED that the Defendant's Amended Motion to Suppress Physical Evidence shall be, and hereby is, GRANTED; and it is

FURTHER ORDERED that the Government's Motion to Dismiss the Indictment shall be, and hereby is, GRANTED; and it is

FURTHER ORDERED that the above-captioned case shall be, and hereby is, DISMISSED from the dockets of this Court.