**UNITED STATES of America**

v.

**Theodore K. GALE, Appellant.**

**No. 91–3038.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 26, 1991.

Decided Jan. 14, 1992.

Certiorari Denied March 9, 1992.
See 112 S.Ct. 1302.

Jeffrey S. Jacobovitz, Washington, D.C. (appointed by the Court), for appellant.

Albert A. Herring, Asst. U.S. Atty., Dept. of Justice, with whom Jay B. Stephens, U.S. Atty., and John R. Fisher, Asst. U.S. Atty., Dept. of Justice, Washington, D.C., were on the brief, for appellee.

Before WALD, SILBERMAN and HENDERSON, Circuit Judges.

Opinion for the Court filed by Circuit Judge WALD.

WALD, Circuit Judge:

Appellant Theodore K. Gale was indicted on charges of possession with intent to distribute five grams or more of crack cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii). Claiming violations of his Fourth, Fifth and Sixth Amendment rights, appellant moved to suppress both the drugs seized and the statements he made to the police at the time of his arrest. The district court granted appellant's motion to suppress three of his four incriminating statements, but refused to suppress the drugs. Appellant pled guilty to the charged offenses, reserving his right to appeal the district court's suppression ruling.[1] We now affirm the district court.

## I. BACKGROUND

The government's evidence showed that on June 7, 1990, at approximately 6:10 pm, Officer Gregory Stroud of the Metropolitan Police Department received a tip from a reliable informant that appellant was in the 600 block of 50th Street, S.E. in possession of an ounce of cocaine. The informant identified appellant by the name of "Teddy"; gave a detailed description of his person, the clothes he was wearing and the car that he drove; and said that he would be leaving his current location by car. Approximately fifteen minutes later, Officer Stroud saw the man that matched the description walk to the described car, enter the car, and proceed to drive away.

Officer Stroud radioed a request to a uniformed officer in a marked patrol car to stop appellant's car. The uniformed officer activated his emergency lights, pulled appellant over, and parked his car in front of appellant's car. Officer Stroud, approaching the scene in his unmarked police car, parked behind appellant's car. Officer Stroud then approached appellant's car from the driver's side. His partner approached from the passenger side. Both men were dressed in plain clothes and neither displayed a weapon.

Officer Stroud asked to see appellant's driver's license, at which time he noticed that the name appearing on the license, "Theodore," corresponded with the informant's statement that appellant's name was "Teddy." Officer Stroud then asked appellant to step out of the car. While

---

1. Appellant was sentenced to 63 months imprisonment, followed by four years of supervised release.

appellant was still in the car, Officer Stroud asked him if he had any drugs. Appellant said that he did (appellant's "first statement") and removed a bag that contained ten packets of crack cocaine from an area between the front seats of his car. Officer Stroud then ordered appellant out of the car and placed him under arrest. Before searching him, Officer Stroud asked appellant if he had any additional drugs. Appellant responded that he had drugs in his crotch (appellant's "second statement") and in the trunk of the car (appellant's "third statement"). Appellant assisted Officer Stroud in removing from his crotch a plastic bag containing crack cocaine and directed Officer Stroud to a pair of rubber gloves in the trunk that contained crack cocaine.

Appellant was then taken to the police station. Approximately 50 minutes later, Officer Stroud removed appellant from his holding cell and took him to an interview room. Officer Stroud then informed appellant of his *Miranda* rights. Appellant waived his rights and stated that he had intended to sell the drugs in order to earn money before he began an intensified probation stemming from a prior narcotics conviction (appellant's "fourth statement").

The district court held two suppression hearings—the second after appellant had retained new counsel—to consider appellant's motions to suppress both the drugs seized and appellant's four statements. At the second suppression hearing, the district court first found that the police had a reasonable and articulable suspicion, based on the informant's tip, to detain appellant for an investigatory stop. The court further found that even though Officer Stroud did not arrest appellant until after he had made his first statement, Officer Stroud had probable cause to arrest upon confirming that the name on appellant's license was consistent with the informant's state-

ment as to appellant's nickname, because at that point "every innocent aspect of the tip in this instance on this record was corroborated." Transcript of Motions Hearing ("Tr. II") (D.D.C. Dec. 12, 1990) at 30. The court finally found that because the police could have lawfully arrested appellant at that time and the drugs would then have been discovered either in a search incident to his arrest or in an inventory search, they were admissible under the inevitable discovery doctrine without regard to any statements made by appellant. The court therefore denied appellant's motion to suppress the drugs found on his person and in his car.

The court also ruled that appellant's first three statements were made as a result of a custodial interrogation and were therefore subject to the requirements of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Because the police did not inform appellant of his *Miranda* rights until just before he made his fourth statement, the court found all three statements inadmissible in the government's case-in-chief.[2] The court refused to exclude appellant's fourth statement, however, finding that the first three statements were not coerced and that therefore the fourth statement was admissible under *Oregon v. Elstad*, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985).

## II. ANALYSIS

### A. *Appellant's Fourth Amendment Claim*

Appellant argues that the police arrested him—as opposed to merely detaining him in an investigatory stop—when they made him pull his car off the road in order to question him.[3] This arrest, he argues, was unlawful as not supported by probable cause and any and all physical and testimonial evidence derived from it should have been suppressed as fruits of a Fourth

---

**2.** The government conceded that appellant's second and third statements were the result of a custodial interrogation and were therefore inadmissible. The government argued, however, that there was no *Miranda* violation with regard to appellant's first statement because appellant

was not yet in custody at the time he made that statement.

**3.** Appellant does not challenge the district court's finding that the informant's tip gave rise to a reasonable and articulable suspicion that appellant was carrying illegal drugs.

Amendment violation. Brief for Appellant at 12–13. We reject appellant's claim.

### 1. The Investigatory Stop

■ Under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and its progeny, police officers possessing a reasonable and articulable suspicion of a suspect's involvement in criminal activity "may detain [the suspect] briefly in order to 'investigate the circumstances that provoke suspicion.'" *Berkemer v. McCarty*, 468 U.S. 420, 439, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317 (1984) (quoting *United States v. Brignoni–Ponce*, 422 U.S. 873, 881, 95 S.Ct. 2574, 2580, 45 L.Ed.2d 607 (1975)). The stop and inquiry, however, must be "'reasonably related in scope' ... to determine [the suspect's] identity and to try to obtain information confirming or dispelling [their] suspicions." *Berkemer*, 468 U.S. at 439, 104 S.Ct. at 3150 (quoting *Terry*, 392 U.S. at 29, 88 S.Ct. at 1884). "[U]nless the detainee's answers provide the officer with probable cause to arrest him, he must then be released." *Id.* 468 U.S. at 439–40, 104 S.Ct. at 3150.

The police did not arrest appellant when they pulled him off the road and approached his car to question him. In *United States v. White*, 648 F.2d 29 (D.C.Cir.), *cert. denied*, 454 U.S. 924, 102 S.Ct. 424, 70 L.Ed.2d 233 (1981), we held that the police had engaged only in an investigatory stop when, in response to an anonymous tip regarding drug activity, they partially blocked defendant's car and approached him with guns drawn. *Id.* at 31. In *United States v. Martinez*, 808 F.2d 1050 (5th Cir.), *cert. denied*, 481 U.S. 1032, 107 S.Ct. 1962, 95 L.Ed.2d 533 (1987), the court similarly found it to be an investigatory stop and not an arrest when the police blocked the defendants' car, ordered them to get out, and patted them down for weapons. *Id.* at 1053. As one court has noted,

"blocking a vehicle generally is reasonable, and not an excessive intrusion, when the suspect is in a vehicle because of the chance that the suspect may flee upon the approach of police with resulting danger to the public as well as to the officers involved." *United States v. Hardnett*, 804 F.2d 353, 357 (6th Cir.1986) (internal quotation omitted), *cert. denied*, 479 U.S. 1097, 107 S.Ct. 1318, 94 L.Ed.2d 171 (1987).

The police in this case parked their cars in a manner that blocked appellant's car, approached him while he was sitting in his car, asked to see his driver's license and then asked him if he had any drugs. On these facts, we find that the police conducted an investigatory stop "'reasonably related in scope' ... to determine [the suspect's] identity and to try to obtain information confirming or dispelling [their] suspicions" that he was in possession of illegal drugs. *Berkemer*, 468 U.S. at 439, 104 S.Ct. at 3150 (quoting *Terry*, 392 U.S. at 29, 88 S.Ct. at 1884).

### 2. The Arrest

■ Appellant was formally placed under arrest, however, immediately after he admitted to Officer Stroud that he was in possession of illegal drugs. Transcript of Motions Hearing (D.D.C. Oct. 22, 1990) ("Tr. I") at 5. For that arrest to be valid, the police had to have probable cause to believe that appellant was engaged in criminal activity. The district court found that probable cause for this arrest arose at the moment Officer Stroud confirmed that the name on appellant's license was consistent with the informant's statement as to appellant's nickname. Tr. II at 30. We need not decide whether probable cause arose at that time, however, because probable cause clearly did arise seconds later when appellant admitted that he was engaged in criminal conduct.[4] Appellant's arrest was thus

---

**4.** Because the district court found that the arrest had taken place prior to Officer Stroud's first question regarding drugs, it ruled that this admission, appellant's first statement, was elicited in violation of his *Miranda* rights. As discussed in the prior section, however, we find that no arrest occurred until after appellant's admission.

The ultimate inquiry under *Miranda* is whether there is a "'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983) (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977)). Although appellant was not free to

supported by probable cause and entirely lawful.

### 3. The Physical Evidence

■ As Officer Stroud's first question to appellant about possession of illegal drugs was entirely proper,[5] there is no basis for suppressing the drugs that appellant removed from the front seat of his car in response to that question. Thus, the district court's denial of appellant's motion to suppress that physical evidence was correct.

Appellant argues, however, that the drugs seized from his person and the trunk of his car were discovered as a result of his second and third statements—both of which the government concedes had not been "Mirandized" although made as a result of questioning after appellant was arrested and in formal custody. These drug seizures, appellant contends, must be suppressed as fruits of the *Miranda* violation. Brief for Appellant at 29. The government counters, and the district court reasoned, however, that appellant's arrest established an independent basis for the search and seizure of the drugs, that is, that the drugs would have inevitably been found and seized regardless of any statements made by appellant. Tr. II at 30.[6]

"[W]hen ... evidence ... would inevitably have been discovered without reference to the police error or misconduct, there is no nexus sufficient to provide a taint and the evidence is admissible." *Nix v. Williams*, 467 U.S. 431, 448, 104 S.Ct. 2501, 2511, 81 L.Ed.2d 377 (1984). The drugs removed from appellant's person and automobile trunk would certainly have been discovered when the police searched his person incident to his arrest, *see United States v. Robinson*, 414 U.S. 218, 236, 94 S.Ct. 467, 477, 38 L.Ed.2d 427 (1973) (warrantless search of person valid when incident to custodial arrest), and his car pursuant to a post-impoundment inventory search, *see South Dakota v. Opperman*, 428 U.S. 364, 372, 96 S.Ct. 3092, 3099, 49 L.Ed.2d 1000 (1976) (upholding warrantless inventory search of lawfully impounded car); *see also United States v. Arango*, 879 F.2d 1501, 1507 n. 2 (7th Cir.1989), *cert. denied*, 493 U.S. 1069, 110 S.Ct. 1111, 107 L.Ed.2d 1019 (1990) (even if search of vehicle at scene of crime were illegal, evidence seized would inevitably have been discovered in DEA inventory search); *United States v. Jenkins*, 876 F.2d 1085, 1088–89 (2d Cir.1989) (discussing FBI policy of conducting inventory searches of lawfully seized vehicles as basis of inevitable discovery of incriminating evidence).[7] We therefore agree with the district court's conclusion that the drugs removed from appellant's person and the trunk of his automobile would have been discovered

---

leave at the time Officer Stroud asked him if he had any drugs, he was subject to a limited seizure only—a *Terry* stop—and not a "full-blown" arrest. As such, the stop did not require the police to inform appellant of his *Miranda* rights before asking him a few brief questions designed to confirm or alleviate their suspicions. *See Berkemer v. McCarty*, 468 U.S. 420, 440, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317 (1984) ("[t]he comparatively nonthreatening character of [*Terry* stops] explains the absence of any suggestion in our opinions that *Terry* stops are subject to the dictates of *Miranda*"). There was thus no *Miranda* violation in asking appellant whether he had any illegal drugs, and, consequently, no taint to a finding of probable cause based upon his subsequent admission that he did.

**5.** *See id.*

**6.** The government argues in the alternative that even if the drugs were discovered as a result of

appellant's second and third statements, "the failure to properly administer *Miranda* warnings does not, without more [*i.e.*, coercion], require suppression of the nontestimonial fruits of an accused's statement." Brief for Appellee at 24. Because we find no error in the district court's rationale for admitting the drugs seized from appellant's person and car, we do not reach the government's alternative argument.

**7.** Officer Stroud testified that he took the steps necessary for impounding appellant's car after his arrival at the police station. Tr. I at 26–27. We note that the Metropolitan Police Department, like virtually every other law enforcement agency, conducts routine inventory searches of impounded vehicles. *See Hill v. United States*, 512 A.2d 269, 277 (D.C.1986) (discussing Metropolitan Police Department procedures governing vehicle inventory searches; noting that search encompasses "the passenger compartment, the glove compartment, whether or not locked, and the trunk, whether or not locked").

without regard to appellant's second and third statements, and the court did not err in denying appellant's motion to suppress them.

## B. Appellant's Fifth and Sixth Amendment Claims

■ The district court suppressed appellant's first three statements, but it found no bar to admission of his fourth statement, which was made after he had waived his *Miranda* rights at the police station. Appellant argues that the fourth statement should have been suppressed as well, since it was clearly influenced by his earlier admissions.

In *Oregon v. Elstad*, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985), the Supreme Court held that a voluntary statement given after *Miranda* warnings is admissible, notwithstanding prior unwarned statements, so long as the prior unwarned statements were not coerced. *Id.* at 318, 105 S.Ct. at 1298. The Court held that

absent deliberately coercive or improper tactics in obtaining the initial statement, the mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion. A subsequent administration of *Miranda* warnings to a suspect who has given a voluntary but unwarned statement ordinarily should suffice to remove the conditions that precluded admission of the earlier statement. In such circumstances, the finder of fact may reasonably conclude that the suspect made a rational and intelligent choice whether to waive or invoke his rights.

*Id.* at 314, 105 S.Ct. at 1296.

Appellant argues that he was faced with a police presence "that was intimidating and inherently coercive" when he made his second and third statements and that therefore his fourth statement should be suppressed under *Oregon v. Elstad.* Brief for Appellant at 32.[8] Every post-arrest custodial interrogation by the police is in some sense "inherently coercive." *Elstad,* however, clearly requires more, for if every such interrogation were deemed "coercive" within the meaning of *Elstad,* the failure to give *Miranda* warnings before one statement would *always* undo a later statement given after such warnings, thereby fatally undermining the rule of *Elstad* itself. Rather, the Court in *Elstad* was concerned about "actual coercion or other circumstances calculated to undermine the suspect's ability to exercise his free will," *id.* at 309, 105 S.Ct. at 1293, "coercion of a confession by physical violence or other deliberate means calculated to break the suspect's will," *id.* at 312, 105 S.Ct. at 1295, and "inherently coercive police tactics or methods *offensive to due process,*" *id.* at 317, 105 S.Ct. at 1297 (emphasis supplied). The district court found no such deliberate police tactics in this case, expressly finding that appellant made his first three statements voluntarily, freely and knowingly. Tr. II at 34. We find nothing in the record to suggest that this finding is in error.[9]

Nor are we persuaded by appellant's reliance on *United States v. Carter,* 884 F.2d 368 (8th Cir.1989), in which the court affirmed the suppression of a post-*Miranda* confession on the ground that it was tainted by the defendant's prior, unwarned statements. In *Carter,* postal inspectors interrogated the defendant for an hour and a half, obtaining various incriminating statements from him. Only after the postal inspectors had elicited the incriminating

---

8. Appellant also argues that his first statement was made as a result of an inherently coercive police presence. However, because we have already concluded that there was no *Miranda* violation with regard to that statement, *see supra* note 4, we consider his *Elstad* argument only as it relates to his second and third statements.

9. Furthermore, a change in location and the passage of time between coerced statements and a post-*Miranda* statement are viewed as relevant to show that any coercion has dissipated to the point that a defendant is able to make a rational decision to waive his rights at a later time. *See Elstad,* 470 U.S. at 310, 105 S.Ct. at 1293 (noting that "[w]hen a prior statement is actually coerced, the time that passes between confessions, the change in place of interrogations, and the change in identity of the interrogators all bear on whether that coercion has carried over into the second confession"); *see also* Tr. II at 33.

statements did they inform him of his *Miranda* rights, whereupon the defendant waived his rights and wrote out a full statement confessing all aspects of his guilt. *Id.* at 369.

The Eighth Circuit rejected the government's argument that the written confession was admissible under *Elstad,* pointing out that the post-*Miranda* statement in *Elstad* was made approximately one hour after the unwarned, suppressed statement, whereas the statement in *Carter* came directly on the heels of the unwarned confession and was thus part of one continuous interrogation process. *Id.* at 373. The court also noted that *Elstad* was not "intended to give a green light to law enforcement officers to ignore the requirements of *Miranda* until *after* such time as they are able to secure a confession," *id.* (emphasis in original), thus agreeing with the *Carter* district court's concern about the police "get[ing] practically all [they] want out of a person before [they] ever give them the *Miranda* rights," *id.* (internal quotation omitted). The court concluded that *"Elstad* did not go so far as to fashion a rule permitting this sort of end run around *Miranda."* *Id.*

This case is clearly distinguishable from *Carter.* Appellant's fourth statement did not come "on the heels" of his unwarned statements, but was separated, as in *Elstad,* by almost an hour. Moreover, Officer Stroud did not "get practically all [he] wanted out of" appellant before administering *Miranda* warnings. He asked only one improper question and the unwarned statements made in response to that question involved a different subject—the location of additional drugs—from that of appellant's post-*Miranda* statement which focused on his motive for distributing the illegal drugs. We do not of course sanction the police officers' failure promptly to advise appellant of his *Miranda* rights following his arrest; we find no evidence, however, of a deliberate "end run" around *Miranda* and, consequently, no error in the district court's refusal to suppress appellant's fourth statement.

### III. Conclusion

For the reasons given, we find no error in the district court's refusal to suppress either the physical evidence seized from appellant's person and car or appellant's fourth statement. We therefore affirm the ruling of the district court.

*So ordered.*