**UNITED STATES of America, Appellee**

**v.**

**Opio MOORE, Appellant.**

**Nos. 93–3158, 96–3046.**

United States Court of Appeals,
District of Columbia Circuit.

April 15, 1997.

Before: EDWARDS, Chief Judge, WALD, SILBERMAN, WILLIAMS, GINSBURG, SENTELLE, HENDERSON, RANDOLPH, ROGERS, TATEL and GARLAND *, Circuit Judges.

### ORDER

On Appellee's Suggestion for
Rehearing *En Banc*

PER CURIAM.

Appellee's Suggestion for Rehearing *En Banc* has been circulated to the full court. The taking of a vote was requested. There-

---

* *Circuit Judge* GARLAND did not participate in

after, a majority of the judges of the court in regular active service did not vote in favor of the suggestion. Upon consideration of the foregoing, it is

**ORDERED**, by the Court, that the suggestion be denied.

Circuit Judges SILBERMAN, WILLIAMS, and RANDOLPH would grant the suggestion.

Separate statement filed by Circuit Judge SENTELLE, concurring in the denial of rehearing *en banc.*

Separate statement filed by Circuit Judge SILBERMAN, dissenting from the denial of rehearing *en banc.*

SENTELLE, Circuit Judge, *concurring in the denial of rehearing in banc:*

Although my exchanges with my dissenting colleague are dangerously approaching the point of shedding more heat than light on the subject of this case, I feel prompted to reply briefly to his call for *in banc* review. Because of the demands that an *in banc* proceeding places on the limited resources of the judiciary, by rule

> such a hearing or rehearing is not favored and ordinarily will not be ordered except (1) when consideration of the full court is necessary to secure or maintain uniformity of its decisions, or (2) when the proceeding involves a question of exceptional importance.

FED.R.APP.P. 35.

I have generally construed this to mean that we should not waste the assets of the court on an *in banc* proceeding unless the panel decision at least (a) is erroneous and (b) establishes or maintains a precedent of some importance. Since this case fits neither of those criteria, it is particularly ill-suited for *in banc* review.

As for the errors asserted by my dissenting colleague, he relies first on the "holding[ ] ... that a defendant is 'in custody' for purposes of the Fifth Amendment when he is merely 'not free to leave.' " While the lan-

this matter.

guage alluded to by the dissenter is surely in the opinion, it is at most a strong dicta and not a holding. In so saying, I do not concede that the dicta would be wrong were it a holding. But the actual holding is our affirmance (104 F.3d 377 at 384–85) of the District Court's ruling at the time of the prosecutor's comment on the defendant's silence that the comment referred to post-arrest silence. As the government did not challenge the District Court's ruling, either then or before us, our more general statement on indicia of custody later in the opinion is not a holding in that it was not essential to our decision. Thus, while not conceding any error, if we made one, it was in either a very fact-specific holding affirming the District Judge on this case or in dicta, neither of which rises to the level of importance supporting an *in banc* review.

Secondly, my colleague rehashes the *Miranda*-based issue from our opinion. He somehow finds it "patently illogical," to distinguish between speech and silence in an in-custody situation. If he were correct, an arrested but not *Miranda*-ized defendant would be faced with two courses of conduct: he could make a voluntary utterance, which could be used against him; or he could stand silent, which could be used against him. I fail to see the patent illogic in rejecting that proposition. For the reasons set forth in the panel opinion, neither of the Supreme Court decisions cited by my dissenting colleague is to the contrary and indeed they support my position. To the extent that *United States v. Rivera*, 944 F.2d 1563, 1568 & n. 11 (11th Cir.1991), is in conflict, that conflict amounts to a single sentence, supplying no reasoning, and resting on a citation to *Fletcher v. Weir*, 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982). For the reasons set forth in the original opinion, our ruling in this case is not in conflict with *Fletcher v. Weir*. Insofar as the Eleventh Circuit disagrees, it is misconstruing that Supreme Court opinion.

Finally, the dissent asserts that the panel opinion "reaches well beyond the arguments presented by defense counsel." However, in so asserting the dissent admits that the defendant devoted a page and a half of his brief to the silence question in which he asserted that the silence was "postarrest." I certainly agree with my colleague that "appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them." *Carducci v. Regan*, 714 F.2d 171, 177 (D.C.Cir.1983). However, I do not read *Carducci* or any other precedent as compelling us to decide only those issues which are argued for more than a page and a half or in which the parties' discussion of an essential aspect of the issue is extensive. *See Alabama Power Co. v. Gorsuch*, 672 F.2d 1, 7 n. 34 (D.C.Cir. 1982) (per curiam) (collecting authorities). If we made such a rule, it might commend counsel to write better briefs, or it might place a counter productive tax on brevity.

In short, I have rarely if ever seen the United States file a petition for *in banc* review with less justification than is present here.

SILBERMAN, Circuit Judge, dissenting from the denial of rehearing *en banc*:

When I wrote separately in this case, I assumed that because the majority had determined the errors it found were "harmless" the case would not be suitable for further review. *United States v. Moore*, 104 F.3d 377, 396 (D.C.Cir.1997) (Silberman, J., concurring). I do not recall another occasion when the government has sought rehearing and suggested *en banc* review where a conviction was upheld. But the government is right; that the majority concluded the errors were "harmless" should not affect our decision whether to rehear the case because the panel opinion adopts two major holdings that will have a broad and immediate impact on law enforcement. Those holdings are:

(1) that a defendant is "in custody" for purposes of the Fifth Amendment when he is merely "not free to leave." This occurs after a *Terry* stop or routine traffic stop when the police discover contraband and before any interrogation. This holding is in conflict with the Supreme Court's reasoning in *Berkemer v. McCarty*, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984), and the caselaw in this circuit. *See United States v. Gale*, 952 F.2d 1412, 1414–15 n. 4

(D.C.Cir.1992). It also contradicts the cases in this circuit defining "arrest" for Fourth Amendment purposes. *See, e.g., United States v. Clark,* 24 F.3d 299, 303–04 (D.C.Cir.1994); *United States v. Clipper,* 973 F.2d 944, 951–52 (D.C.Cir.1992), *cert. denied,* 506 U.S. 1070, 113 S.Ct. 1025, 122 L.Ed.2d 171 (1993); *United States v. Jones,* 973 F.2d 928, 929–31 (D.C.Cir.), *vacated in part on other grounds pending rehearing en banc,* 980 F.2d 746 (D.C.Cir. 1992), *on rehearing en banc,* 997 F.2d 1475 (D.C.Cir.1993), *cert. denied,* 510 U.S. 1065, 114 S.Ct. 741, 126 L.Ed.2d 704 (1994).[1] (2) that even though defendant was not interrogated and the government was not obliged to give a *Miranda* warning, the government was not permitted to introduce evidence of defendant's silence at the moment when the contraband was discovered. Since Judge Sentelle's opinion acknowledges that a defendant's voluntary statement under those circumstances would be admissible, *see* 104 F.3d at 389 n. 5, to conclude that his silence is constitutionally protected is not only patently illogical, it is contrary to the reasoning of governing Supreme Court cases, *see, e.g., United States v. Robinson,* 485 U.S. 25, 33–34, 108 S.Ct. 864, 869–70, 99 L.Ed.2d 23 (1988); *Fletcher v. Weir,* 455 U.S. 603, 607, 102 S.Ct. 1309, 1312, 71 L.Ed.2d 490 (1982), and in direct conflict with at least one other circuit. *See United States v. Rivera,* 944 F.2d 1563, 1567–70 (11th Cir. 1991); *see also United States v. Zanabria,* 74 F.3d 590, 593 (5th Cir.1996).

The government is particularly aggravated by the panel opinion because it reaches well beyond the arguments presented by defense counsel. *See* 104 F.3d at 391–92 (Silberman, J., concurring). As the government notes, defense counsel only devoted a page and a half of its brief to the defendant's so-called "post-arrest silence" and never made any

sort of argument at trial or on appeal that the defendant was *in custody,* short of arrest, for Fifth Amendment purposes when his silence was observed—defense counsel simply asserted before us, with no support or citation to the record, that the silence was "post-arrest." The panel did not even have the entire portion of the record upon which a "custody" finding is supposedly based or which described defendant's reaction and the timing of relevant events. The government now points out that the actual circumstances were very close to what I discussed as a hypothetical in my separate opinion. When the drugs were discovered, the defendant's immediate response was to "let out a sigh," look dejected, and say nothing.

The government, in urging us, at a minimum, to vacate the Fifth Amendment holding of the panel majority, relies on one of our famous cases, *Carducci v. Regan,* 714 F.2d 171 (D.C.Cir.1983), in which then-Judge Scalia, in rejecting an effort to go beyond the parties' arguments, said, "appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them." *Id.* at 177. The difficulty is that the rigor and integrity of *Carducci* was severely impaired by the unanimous decision of the Supreme Court in *U.S. Nat. Bank of Oregon v. Independent Ins. Agents of America, Inc.,* 508 U.S. 439, 113 S.Ct. 2173, 124 L.Ed.2d 402 (1993), in which the courts of appeals were explicitly encouraged to decide nonjurisdictional issues not presented by the parties (even issues waived by plaintiffs) so long as a court views the legal issues as anterior to those presented.

In *Insurance Agents* we had decided *sua sponte* that a 1916 statute on which a disputed regulation rested had itself been repealed (albeit inadvertently) two years later even though the plaintiff determined (wisely it

---

**1.** Judge Sentelle now protests that the custody determination is not actually a holding of the opinion. *See* Separate Concurring Statement at 1–2. But the determination that Moore was in custody, as the government correctly insists, is the pivot upon which the entire question of defendant's protected silence turns. It cannot be dismissed as an uncontested "ruling" of the district court, because the district court made no

such finding—it made only a passing remark in response to defense counsel's objection to the use of post-*arrest* silence, an objection that the district court overruled. *See* 104 F.3d at 392 (Silberman, J., concurring). And the government has always insisted that the defendant's reaction was prearrest. The majority *sua sponte* developed the notion that the silence occurred post-*custody* but pre-arrest.

turned out) not to argue the statutory repeal point. *See Independent Ins. Agents of America, Inc. v. Clarke,* 955 F.2d 731 (D.C.Cir.1992), *rev'd,* 508 U.S. 439, 113 S.Ct. 2173, 124 L.Ed.2d 402 (1993). The original statute permitted banks "located and doing business in any place the population of which does not exceed five thousand inhabitants" to sell insurance. *Id.* at 732. This court compelled the parties to brief the issue supplementally and then decided that the statute had, indeed, been repealed. Not surprisingly—given the policy consequences—the Supreme Court reversed but endorsed the panel's reaching of the issue. The Court, however, ducked the question of whether the panel was *obliged* to reach the anterior question, stating only that the court's decision to do so was not an abuse of discretion. That meant that federal courts were free, without standards to follow, to decide such an issue or not depending on whether it pleased the judges to do so. Under that mode of thinking, if parties were litigating a breach of contract, a federal court would be entitled to conduct a "self-directed inquiry" into whether a contract was even formed, even if the parties concurred on that point.

I am inclined to believe that one can explain the Court's unanimous agreement in *Insurance Agents* on this issue, despite the opinion's obvious analytical flaws,[2] in part on the urging of the government (the same government now complaining about similar judicial behavior), which wished to reverse this court's opinion on the merits since it placed a cloud over the legality of banks selling insurance, a practice of the last 70 years. But, perhaps even more important to the opinion,

I suspect, is that the justices did not wish to restrict their *own* ability to reach out to issues not presented in cases brought to the Court, nor did they wish to justify that practice by openly acknowledging the Supreme Court as not subject to normal judicial constraints (A "non-court court?" Compare *Board of Governors of the Fed. Reserve Sys. v. Dimension Fin. Corp.,* 474 U.S. 361, 363, 106 S.Ct. 681, 683, 88 L.Ed.2d 691 (1986), which refers to "non-bank banks").

In any event, it is an indicia of judicial overreaching (if not judicial activism) for any court to decide issues not properly presented. Judicial overreaching or activism in the lower federal courts, much discussed these days, invariably traces back to Supreme Court decisions, often decisions involving entirely different subject matter, for the lower federal courts are even more influenced by the *manner* in which the Supreme Court decides cases than by the particular substantive results. Thus, *Insurance Agents*—a particularly egregious example of the Supreme Court's cutting of traditional judicial corners—has had a broad impact. Judges, even disciplined judges, are more willing than they were prior to that case, if convinced by a legal theory, to seek to fit the controversy before them to that theory, rather than vice versa. This case is one of those unfortunate examples.

---

**2.** The Court reasoned that a court cannot be bound by a stipulation of law and in doing so ignored the obvious difference between both parties agreeing that a statute or a case means something it does not and a plaintiff refusing to make a claim based on the validity of a statute.