SILBERMAN, Senior Circuit Judge, concurring.
I concur fully in the court’s opinion, but write separately to discuss the government’s waiver argument. Although it is perfectly appropriate for the court to rest its decision on the alternative grounds we have used, normally we would consider first whether, as the government contends, Simpson waived the right to appeal his sentence on the basis he asserts. See United States v. West, 392 F.3d 450, 458 (D.C.Cir.2004).
Upon reading the briefs, I concluded that Simpson knowingly and intelligently waived the right to appeal his sentence on the basis of Booker errors. Simpson’s plea agreement included the following waiver provision:
Limited Waiver of Appeal: Your client is aware that federal law ... affords him the right to appeal his sentence.... [T]he defendant waives the right to appeal his sentence or the manner in which it was determined ..., except to the extent that (a) the Court sentences the defendant to a period of imprisonment longer than the statutory maximum or (b) the Court departs upward from the applicable Sentencing Guideline range .... Realizing the uncertainty in estimating what sentence the Judge will ultimately impose, the defendant knowingly and willingly waives his right to appeal the sentence, to the extent noted above, in exchange for the concessions made by the [government] in this agreement.
By his signature, Simpson acknowledged that he had “read [the] plea agreement and carefully reviewed every part of it with [his] attorney” and that he “fully understood] this plea agreement and voluntarily agree[d] to it.” At Simpson’s plea hearing, the court asked Simpson if he had “had the opportunity to read over the letter containing the plea agreement carefully” and if he had “had the chance to discuss [the plea agreement] with [his] counsel,” to which he answered in the affirmative. The court also asked Simpson, “do you understand that under the plea agreement in this case, you are giving up your right to appeal the sentence that I impose to the extent that is noted in the plea agreement,” and Simpson replied, “Yes, sir.”
Simpson asserts that the waiver was not knowing and intelligent because “it was based on misinformation as to the mandatory nature of the sentencing guidelines,” but the Supreme Court has held that imperfect knowledge of future developments *1193 in the law has no bearing on the question of the validity of a waiver. For instance, in Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), the Court observed that
[a] defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State’s case or the likely penalties attached to alternative courses of action. More particularly, absent misrepresentation or other impermissible conduct by state agents, a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise. A plea of guilty triggered by the expectations of a competently counseled defendant that the State will have a strong case against him is not subject to later attack because the defendant’s lawyer correctly advised him with respect to the then existing law as to possible penalties but later pronouncements of the courts, as in this case, hold that the maximum penalty for the crime in question was less than was reasonably assumed at the time the plea was entered.
Id. at 757, 90 S.Ct. 1463 (citation omitted). More than 30 years later, the Supreme Court reaffirmed Brady and explained that “the Constitution, in respect to a defendant’s awareness of relevant circumstances, does not require complete knowledge of the relevant circumstances, but permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a defendant might labor.” United States v. Ruiz, 536 U.S. 622, 630, 122 S.Ct. 2450, 153 L.Ed.2d 586 (2002). Applying these cases, nine circuit courts have definitively upheld pr e-Booker sentence-appeal waivers against post -Booker claims of a right to a discretionary sentence. See United States v. Morgan, 406 F.3d 135, 137 (2d Cir.2005); United States v. Lockett, 406 F.3d 207, 214 (3d Cir.2005); United States v. Johnson, 410 F.3d 137, 152-53 (4th Cir.2005); United States v. Bradley, 400 F.3d 459, 463-64 (6th Cir.2005); United States v. Bournes, 405 F.3d 634, 636 (7th Cir.2005); United States v. Killgo, 397 F.3d 628, 629 n. 2 (8th Cir.2005); United States v. Cortez-Arias, 425 F.3d 547, 548 (9th Cir.2005); United States v. Green, 405 F.3d 1180, 1190 (10th Cir.2005); United States v. Frye, 402 F.3d 1123, 1129 (11th Cir.2005).[1]
This would have seemed to settle the waiver issue against Simpson, had he not brought to the court’s attention Halbert v. Michigan, - U.S.-, 125 S.Ct. 2582, 162 L.Ed.2d 552 (2005), in a Rule 28(j) letter the day before oral argument. Simpson relies on Halbert for the proposition that a defendant pleading guilty cannot waive a right that has not yet been recognized — in Simpson’s case, “the right to obtain a discretionary sentence via appeal.”
In Halbert, the Court addressed the constitutionality of a Michigan constitutional amendment limiting the appellate rights of defendants who plead guilty or nolo contendere. Under the amendment, such defendants have no appeal of right to the Michigan Court of Appeals, the state’s *1194 intermediate appellate court. See Mich. Const, art. I, § 20. Instead, defendants must petition the court for leave to appeal and, in most cases, indigent defendants are not entitled to appointed-counsel to aid them during this process. See Halbert, 125 S.Ct. at 2588. The Court invalidated the Michigan scheme and held that it created a situation more like an appeal of right, for which Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), requires the appointment of counsel, than a discretionary appeal, for which Ross v. Moffitt, 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974), provides that such appointment is not constitutionally required. The Court reasoned that “Michigan’s intermediate appellate court looks to the merits of the claims made in the application” and that “indigent defendants pursuing first-tier review in the Court of Appeals are generally ill equipped to represent themselves.” Halbert, 125 S.Ct. at 2590.
Relevant to our case, the majority responded to Michigan’s contention that “even if Halbert had a constitutionally guaranteed right to appointed counsel for first-level appellate review, he waived that right.” Id. at 2594. The Court’s response included two independent grounds. First, the Court stated, surprisingly, that “Hal-bert, in common with other defendants convicted on their pleas, had no recognized right to appointed appellate counsel he could elect to forgo.” Id. (emphasis added). The court also rejected Michigan’s waiver argument because “the trial court did not tell Halbert, simply and directly, that in his case, there would be no access to appointed counsel.” Id.
It is of course the first ground on which Simpson relies. He claims that the “[un-jrecognized right to appointed appellate counsel” at issue in Halbert is indistinguishable from the “[unjrecognized” jury trial right at issue in Booker, and suggests that Halbert’s, sweeping anti-waiver language casts doubt not only on the circuit courts’ Booker-waiver cases, but also on both Brady and Ruiz. Justice Thomas actually recognized this newly created tension in his dissent. After musing that “[w]hat this cryptic statement” — “no[t] recognized” — “means is unclear,” Halbert, 125 S.Ct. at 2604 (Thomas, J., dissenting), Justice Thomas observed, presciently, that
the majority’s failure to make clear which sources of law are to be considered in deciding whether a right is “no[t] recognized,” and hence nonwaivable, is bound to wreak havoc. For instance, suppose that a defendant waived the right to appeal his sentence after the regional Court of Appeals had held that the principle of Blakely v. Washington did not apply to the United States Sentencing Guidelines, but before this Court held the contrary in United States v. Booker. The defendant could claim that, in his circuit, the Sixth Amendment right against the application of the Guidelines was “no[t] recognized,” and hence that the right was nonwaivable.
Id. at 2604 n. 2 (citations omitted).
The Supreme Court majority’s blithe drive-by implicit questioning of the considered views of eight circuit courts,[2] not to speak of the doubt it casts upon its own precedent, is to say the least rather discouraging to circuit judges. I suspect the Supreme Court’s approach stems from its disposition to decide the issues that generate certiorari interest “come hell or high water.” The shame of it is that the manner in which the Court decides cases is more important than what it decides. It is the former that has the greatest influence on the American judiciary. See United *1195 States v. Moore, 110 F.3d 99, 102 (D.C.Cir. 1997) (Silberman, J., dissenting from denial of rehearing en banc). In acting as it did in Halbert, the Court once again demonstrated that it sees itself primarily as a tribunal for issue determination rather than resolution of cases and controversies — which is why I have referred to it as a “noncourt court.” See Lederman v. United States, 291 F.3d 36, 48 (D.C.Cir. 2002) (Silberman, J., concurring).
In any event, Halbert certainly leads us to pretermit the waiver issue and instead rely on the alternative grounds set forth in the court’s opinion.

. See also United States v. Sahlin, 399 F.3d 27, 31 (1st Cir.2005) (rejecting a defendant's argument that Booker rendered his plea involuntary and observing that “the possibility of a favorable change in the law occurring after a plea is one of the normal risks that accompany a guilty plea”); United States v. Bond, 414 F.3d 542, 545 (5th Cir.2005) (delineating the bounds of a sentence-appeal waiver where a defendant conceded that the waiver’s broad language covered Booker errors).

. Only the Ninth Circuit's Booker-waiver decision, Cortez-Arias, was issued post-Halbert.